IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RAYMOND HERRING, | ) | Case No. 1:21-CV-01496 |
| | ) | |
| Petitioner, | ) | JUDGE JAMES R. KNEPP II |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | THOMAS M. PARKER |
| LEON HILL, WARDEN, | ) | |
| | ) | |
| Respondent. | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

Our petitioner, Raymond Herring, pleaded guilty to one count for felonious assault in 1993. *See State ex rel Herring v. Wainwright*, 2020-Ohio-4521, at ¶ 3 (Ct. App.); *State v. Herring*, Case No. CR-293978, Cuyahoga County Court of Common Pleas. The trial court sentenced Herring to serve an indefinite prison term of 8 to 25 years. *See* ECF Doc. 4-1 at 8. Subsequently, Herring was convicted for crimes he committed while paroled. *See Herring*, 2020-Ohio-4521, at ¶¶ 3-4.

Herring petitions for writ of habeas corpus under 28 U.S.C. § 2254, claiming he is challenging his 1993 conviction. ECF Doc. 1. Herring raises four grounds for relief:

**GROUND ONE:** ORC 2929.14(E)(1)(a) is an ex post facto law, prohibited by Art. 1., Sec. 10, Cl. 1.

**GROUND TWO:** ORC 2929.41 is an unconstitutional statute.

**GROUND THREE:** By permitting the BOSC to alter the Petitioner's sentence, the Ohio Supreme Court authorized a secret sentencing mechanism in violation of the Separation of Powers Doctrine.

**GROUND FOUR:** Petitioner's incarceration is unconstitutionally unlawful.

ECF Doc. 1 at 5-10.

Respondent, Warden Leon Hill, filed a return of writ, arguing that: (i) Herring's § 2254 petition is time-barred under the Antiterrorism and Effective Death Penalty Act of 1996's ("AEDPA") one-year statute of limitations; and (ii) Herring's claims are noncognizable or otherwise meritless.  *See* ECF Doc. 4.  Herring filed a traverse.  ECF Doc. 10.

Because Herring's § 2254 petition is untimely, I recommend that Herring's claims be DISMISSED and that his petition for a writ of habeas corpus be DENIED.  I further recommend that Herring not be granted a certificate of appealability.

## II.     State Court History

### A.       1993 Conviction

On March 29, 1993, a Cuyahoga County grand jury indicted Herring for felonious assault (Count 1) with specifications for harming a peace officer and use of a firearm; unlawful possession of a dangerous ordnance (Count 2); possession of criminal tools (Count 3); and having weapons while under disability (Count 4).  ECF Doc. 4-1 at 4-7.  Each charge had a repeat violent offender ("RVO") specification attached.  *Id.*

On July 23, 1993, Herring withdrew his previous plea of not guilty, and entered a plea of guilty to count one; the remaining counts were dismissed on the prosecutor's motion.[1]  *See* Exhibit 32; ECF Doc. 4-1 at 8-11.  On September 14, 1993, the trial court sentenced Herring to serve an indefinite prison term of 8 to 25 years.  ECF Doc. 4-1 at 8-11.  Herring did not appeal this conviction to the Ohio Court of Appeals.

---

[1] The warden represents that the document entry for Herring's change of plea hearing and entrance of a guilty plea could not be found by the Cuyahoga County Court of Common Pleas.  ECF Doc. 4 at 3 n.2.  Herring does not contest that this is what occurred, however.

**B.    2001 Conviction**

Herring was paroled on July 22, 1999, returned to the institution on October 6, 1999, and re-paroled on November 22, 1999.  *See* ECF Doc. 4-1 at 244.[2]  During the March 2000 term[3] of the Summit County grand jury, while Herring was paroled, the grand jury indicted Herring on one count of aggravated robbery (Count 1), and one count of abduction (Count 2).  ECF Doc. 4-1 at 12-13.  The indictment was later amended to attach firearm and RVO specifications to each count.  ECF Doc. 4-1 at 14-15.  Herring pleaded not guilty.  ECF Doc. 4-1 at 16-17.

On September 6, 2000, following a bench trial, Herring was found guilty on all counts and on all specifications.  ECF Doc. 4-1 at 18-20  The trial court imposed a mandatory three-year prison term on each firearm specification, which were ordered to be served concurrently to each other.  *Id.*  Those prison terms were ordered to be served consecutively to a five-year prison term on Count 1 and a three-year term on Count 2, which were to be served concurrently.  *Id.*  Finally, the court ordered Herring to serve a two-year term for the RVO specifications that was to be served consecutively to the terms on Counts 1 and 2.  ECF Doc. 4-1 at 19.  In aggregate, the trial court imposed a 10-year sentence.  *Id.*

Herring appealed and his judgment to the Ohio Court of Appeals, which reversed and remanded Herring's conviction, in part, for a retrial because it held that Herring's conviction on Count 1 and the related RVO specification were against the manifest weight of the evidence.  ECF Doc. 4-1 at 22-37.

---

[2] Although neither party cites a court document indicating Herring was paroled on this date; neither party contests the representations regarding Herring's parole made in the timeline of changes in Herring's estimated release date provided by the Ohio Department of Rehabilitation and Correction.  *See* ECF Doc. 4-1 at 244-245.
[3] The exact date of the indictment is illegible, but Warden Hill represents that it was the March grand jury term, and Herring does not dispute this representation.  ECF Doc. 4 at 3.

Herring filed a motion for a delayed appeal to the Ohio Supreme Court, following the Ohio Court of Appeals' decision, but the Ohio Supreme Court denied the motion.  ECF Doc. 4-1 at 38.

On June 29, 2001, the trial court resentenced Herring; the State dismissed Count 1 and the trial court ordered Herring to serve an aggregate sentence of six years, consisting of three-year prison terms each on the abduction charge and the firearm specification.  ECF Doc. 4-1 at 39.  As to the gun specification, the trial court stated: "IT IS FURTHER ORDERED that the Three (3) year mandatory sentence [for the possession of a firearm] imposed in this case be served prior to, and CONSECUTIVELY, with the sentence imposed in Count Two (2)."  *Id.*

Herring was paroled on April 3, 2006.  ECF Doc. 4-1 at 244.[4]  On May 23, 2006, Herring was declared at large; on being restored on October 29, 2006, he was assessed with 38 days lost time.  *Id.*  On May 23, 2007, Herring was again declared to be at large; he was restored on January 13, 2008 and was assessed with 235 days lost time.  ECF Doc. 4-1 at 244-245.

### C.    2008 Convictions

On April 10, 2007, a Cuyahoga County grand jury indicted Herring on two counts of felonious assault (Counts 1 and 2) with notices of prior conviction and RVO specifications attached.  ECF Doc. 4-1 at 40-42.

On July 7, 2007, a Cuyahoga County grand jury indicted Herring on one count of felonious assault (Count 1) with one-year and three-year firearm specifications attached, a notice of prior conviction, and an RVO specification.  ECF Doc. 4-1 at 43.  In Counts 2 and 3, Herring was charged with having weapons while under a disability.  ECF Doc. 4-1 at 44.

---

[4] Although neither party cites a court document indicating Herring was paroled on this date; neither party contests the representations regarding Herring's parole made in the timeline of changes in Herring's estimated release date provided by the Ohio Department of Rehabilitation and Correction.  *See* ECF Doc. 4-1 at 244-245.

4

On February 11, 2008, a Cuyahoga County grand jury indicted Herring for carrying a concealed weapon (Count 1); possession of a firearm in a liquor permit premises (Count 2); having a weapon while under disability (Count 3); drug possession (Count 4); and drug trafficking (Count 5).  One-year firearm specifications were attached to Counts 2, 4 and 5. And forfeiture specifications were attached to each count.  ECF Doc. 4-1 at 45-46.

At a May 21, 2008 plea hearing, all three indictments were addressed.  ECF Doc. 4-1 at 47-51.  As to the April 2007 case, the State withdrew the notice of prior conviction and RVO specification as to Count 1.  ECF Doc. 4-1 at 47.  Herring pleaded guilty to Count 1 as amended and Count 2 was dismissed.  *Id.*  The trial court imposed a one-year sentence to be served concurrently with the sentences imposed in the other two cases.  *Id.*

As to the July 2007 case, the State amended the indictment by removing the firearm specifications, notice of prior conviction, and RVO specification as to Count 1. ECF Doc. 4-1 at 48-49.  Herring withdrew his prior not guilty plea and pleaded guilty plea to Count 1 as amended and to Count 2.  *Id.*  Count 3 was dismissed.  *Id.*  The trial court imposed a one-year sentence on each count, with the terms to run concurrently with each other and with the sentences imposed in the related cases.  *Id.*

As to the February 2008 indictment, the State amended the offense date and Herring withdrew his former not-guilty plea and pleaded guilty to the amended indictment.  ECF Doc. 4-1 at 50-51.  The trial court imposed an aggregate sentence of 2 years and 6 months, to be served concurrently with the sentences imposed on his February and May 2007 cases.  *Id.*  As to the firearm specifications, the trial court merged them for sentencing purposes and ordered Herring to serve a one-year prison term consecutively to the sentences imposed on the related counts.  *Id.*

Herring did not directly appeal any of these convictions to the Ohio Court of Appeals.

**D.     2018 State Petition for Writ of Habeas Corpus**

      **1.     Before the Ohio Court of Appeals**

Ten years after his latest convictions, on August 27, 2018, Herring filed a pro se petition for writ of habeas corpus in the Supreme Court of Ohio. ECF Doc. 4-1 at 52. Herring's petition argued that the parole board or the state department of corrections had "changed Relator's sentence from concurrent to consecutive without an amended Journal Entry from the sentencing Judge, exceeding the maximum expiration date from April 4, 2018 to December 31, 2022." ECF Doc. 4-1 at 56, 60-61. In his summary of the facts, he argued that his "sentences ran concurrently from June of 2001 until a later date in March 2018, when "OAPA" and/or "BOSC" took it upon themselves to start running the sentences consecutively." "OAPA" and/or "BOSC" changing Relator's sentence to consecutive represents a violation of his <u>Due Process</u> under the <u>Constitution of the United States 14th Amendment Section 1</u>." ECF Doc. 4-1 at 57. He further argued that the parole authorities made the determination as to which sentences were to be served consecutively and thus violated the separation of powers and resulted in a violation of the Eighth Amendment. ECF Doc. 4-1 at 58-59, 62-64. With his petition, Herring attached a response to a letter he wrote, dated October 29, 2015, to the Bureau of Sentence Computation, indicating that lost time as added to his estimated release date for the time he was a parole violator at large. ECF Doc. 4-1 at 81.

On October 10, 2018, the Ohio Supreme Court dismissed Herring's petition. ECF Doc. 4-1 at 100.

### E.      2019 State Petition for Writ of Habeas Corpus

On August 29, 2019, Herring filed a petition for a writ of habeas corpus in the Ohio

Court of Appeals.  ECF Doc. 4-1 at 101.  Herring contended that the sentencing entries from his

2001 and 2008 convictions did not reference his 1993 conviction and, thus, "[i]t is unclear,

because there is no reference whatsoever, whether it was that court's intention that its prior

sentence was to run concurrent with, or consecutive to petitioner's indeterminate sentence."

ECF Doc. 4-1 at 102.  Regardless, he argued:

> [T]he maximum expiration date of petitioner's aggregate sentence remain[ed] April
> 3, 2018, because under Ohio Senate Bill 2, which was enacted in 1996, former Ohio
> Rev. Code 2929.41(B)(3) no longer applied.  Instead, under the new statutory
> provision, the sentences imposed for crimes committed while on parole was to run
> concurrently with petitioner's prior sentence absent a prison in [the 2001
> conviction] and [the 2008 conviction], sentencing entries requiring that the
> sentences be served consecutively.  Because the trial judge did not order that the
> sentences run consecutively with petitioner's sentences, the April 3, 2018
> maximum expiration date remain[ed] unchanged."

ECF Doc. 4-1 at 102.  Herring included various attachments to his petition, including the prior

response from the BOSC and a letter regarding his release statute history.  ECF Doc. 4-1 at 127,

129.

The State moved for summary judgment on Herring's petition arguing that (i) Herring's

challenge to his sentencing calculations are not cognizable in a habeas proceeding, (ii) Herring's

claims are without merit as his estimated release date was extended by operation of Ohio law,

and (iii) Herring failed to adhere to the mandatory filing requirements of O.R.C. § 2969.25.  ECF

Doc. 4-1 at 143-148.  The State included a letter from BOSC indicating that Herring's estimated

maximum date of release was extended based on the consecutive nature of the sentence for his

gun specification convictions.  ECF Doc. 4-1 at 150-151.

Herring opposed the motion, asserting that his sentences had already been carried out and, thus, the BOSC's calculations were incorrect, and done without any legal authority.  ECF Doc. 4-1 at 153-156.  In substantively addressing his claims and responding to the State's, Herring relied exclusively on state law.  *See id.*

On January 13, 2020, the Ohio Court of Appeals granted the State's motion for summary judgment, finding that (i) to the extent the sentencing entries were being challenged, Herring's petition failed to state a proper claim for relief; and (ii) Herring's sentences were properly calculated under Ohio statutory law.  ECF Doc. 4-1 at 158-160.

### 2.      Before the Ohio Supreme Court

On February 24, 2020, Herring appealed the Ohio Court of Appeals' decision to the Ohio Supreme Court.  ECF Doc. 4-1 at 162-163.  Before the Ohio Supreme Court, Herring raised five propositions of law:

> Proposition of Law Number I: The Court of Appeals erred to the prejudice of appellant, and committed reversible error, by basing their decision on the unfounded, unsupported, and inaccurate factual findings that appellant was the party challenging the accuracy of the sentencing journal entries in his case and that the gun specification enhancements from 2001 and 2008 applied to his 1993 sentence on the theory that was a base sentence to the 2001 and 2008 gun specification enhancements.

> Proposition of Law Number II: The Court of Appeals committed prejudicial erro[r] when it suspended appellant's right to habeas corpus relief in violation of Article I, Section 9 of the United States Constitution and Article I, Section 8 of the Ohio Constitution.

> Proposition of Law Number III: The Court of Appeals erred to the prejudice of appellant, committed reversible error, and failed to uphold the Separation of Powers Doctrine, by dismissing his petition for habeas corpus relief and thereby allowing a state agency of the Executive Branch to override the Sentencing Journal Entries made by trial courts in the Judicial Branch.

> Proposition of Law Number IV: The Court of Appeals erred to the prejudice of appellant, committed reversible error, and denied Due Process of Law secured by

the Fifth and Fourteenth Amendments to the United States Constitution, when it denied the petition for writ of habeas corpus.

<u>Proposition of Law Number V</u>: The Court of Appeals erred to the prejudice of appellant, committed reversible error, and violated his right to Fundamental Fairness under the Fifth and Fourteenth Amendments to the United States Constitution by inaccurately assessing the facts of this case, misapplying constitutional and statutory law, allowing BOSC to violate the Separation of Powers Doctrine, and then dismissing the habeas corpus petition in such a manner as would ordinarily foreclose review in federal court thereby suspending his privilege of habeas corpus under both the United States and Ohio Constitutions.

ECF Doc. 4-1 at 184-207. The State opposed the appeal on state law grounds, reiterating its positions from the motion for summary judgment. ECF Doc. 4-1 at 235-241.

Herring filed a reply brief, contesting what he considered to be six misstatements of facts made by the State, namely: (i) his contention that the time added to his estimated release date was unrelated to his 2001 and 2008 convictions; (ii) the State erroneously only mentioned his 2008 conviction as the source of his time; (iii) he did not know what BOSC understood; (iv) his claims are cognizable; (v) the phrasing of the journal entries should control the execution of his sentences; and (vi) he satisfied the filing requirements for a habeas petition. *See* ECF Doc. 4-1 at 255-269.

The Ohio Supreme Court affirmed the court of appeals denial of Herring's petition. ECF Doc. 4-1 at 272. Relying on Ohio law, the Ohio Supreme Court held that the court of appeals did not err because, under former O.R.C. §2929.14(E)(1)(A), the gun specifications sentences for Herring's convictions were required to be served "consecutively to any other prison term or mandatory prison term previously or subsequently imposed upon the offender." ECF Doc. 4-1 at 274.

### III.    Federal Habeas Petition

Herring, proceeding through counsel, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 in this court on August 2, 2021.  ECF Doc. 1.  Herring alleged four claims for relief:

> **GROUND ONE:** ORC 2929.14(E)(1)(a) is an ex post facto law, prohibited by Art. I, Sec. 10, Cl. 1
> Supporting Facts: See Attached Pages 6A –
> Please note that while the supporting facts include law, the law has been included to give a factual basis and a procedural history of the issue before this Honorable Court.[5]
>
> **GROUND TWO:** ORC 2929.41 is an unconstitutional statute.
> Supporting Facts: The Petitioner was sentenced pursuant to ORC 2929.41, although this statute was not controlling in any of the relevant times in which the Petitioner was sentenced.  On February 27, 2006, the Ohio Supreme Court declared the statute unconstitutional under United States Supreme Court prec[e]dent.  This statute was unconstitutional from January 1, 1974 through the revival of it on September 30, 2011.  As such, at all three (3) of the Petitioner's sentencing dates, this law was excised and unconstitutional.  As such, the Petitioner should not have been sentenced pursuant to this law.
>
> **GROUND THREE:** By permitting the BOSC to alter the Petitioner's sentence, the Ohio Supreme Court authorized a secret sentencing mechanism in violation of the Separation of Powers Doctrine.
> Supporting Facts: The Supreme Court's decision permits state-employe[e]s, unlicensed to practice law to interpret sentencing statutes and alter validly imposed sentenced by the Trial Court to meet with their own lay-person understanding of the law.
>
> **GROUND FOUR:** Petitioner's incarceration is unconstitutionally unlawful.
> Supporting Facts: Respondent is an employee of the Ohio Department of Rehabilitation and Correction (ODRC).  He is unlawfully imprisoning petitioner based on unconstitutional action taken by the Ohio Parole Board, only made possibly by the enactment of an ex post facto law by the Ohio General Assembly on 7-1-96, and the retroactive application of a law declared unconstitutional in 2006 by the Ohio Supreme Court, but revived in 2011 by the Ohio General Assembly:  This creates an unlawful sentencing process, which allows BOSC to lengthen sentences in violation of the U.S. Constitution.

ECF Doc. 1 at 5-10.

---

[5] No additional pages were provided regarding this Ground.

**IV.  Statute of Limitations**

Herring contends that his petition is timely because he did not learn of the factual

predicate for his claim until the Ohio Supreme Court rendered its decision on September 23,

2020.  ECF Doc. 1 at 13.  Herring adds that he did not know of the secret sentencing mechanism

permitting the BOSC to alter his sentence, until it was approved by the Ohio Supreme Court in

its decision denying his second habeas petition.  ECF Doc. 1-3 at 14.

Warden Hill contends that Herring's petition is untimely by five years.  ECF Doc. 4

at 9-15.  He argues that – at best – Herring learned of the four years being added to his estimated

release date in August 2015; thus, Herring knew the factual predicate for his instant petition, but

waited over six years before filing.  ECF Doc. 4 at 9-11.  Moreover, Warden Hill argues that

Herring has not shown his diligence in presenting his alleged federal claims, that extraordinary

circumstances presented his timely filing, or that he raises a claim of actual innocence.  ECF

Doc. 4 at 12-15.

In his traverse, Herring reiterates his argument, but also argues that, although he knew of

the additional time in 2015, he did not know the correct reason for it until 2019, from which time

he timely pursued his petition and he could not file his petition any earlier, as he need to wait

until he was actually being held unlawfully.  ECF Doc. 10 at 6-9.

AEDPA imposes a one-year statute of limitations upon all applications for a writ of

habeas corpus under 28 U.S.C. § 2254.  28 U.S.C. § 2244(d)(1).  The one-year period begins to

run from the latest of:

> (A) the date on which the judgment became final by the conclusion of direct
> review or the expiration of the time for seeking such review;
>
> (B) the date on which the impediment to filing an application created by State
> action in violation of the Constitution or laws of the United States is removed, if
> the applicant was prevented from filing by such State action;

(C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

(D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.

*Id.* The one-year statute of limitations is tolled during the pendency of properly filed motions for post-conviction relief or other collateral proceedings. *Id.* § 2244(d)(2). A motion is "properly filed" when it complies with the state's rules governing filing, which includes time limits on delivery. *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). Untimely filings have no tolling effect. *Pace v. DiGuglielmo*, 544 U.S. 408, 413-14, 417 (2005). Once the one-year period has expired, it cannot be revived by later-filed state collateral review proceedings. *Keeling v. Warden, Lebanon Corr. Inst.,* 673 F.3d 452, 460 (6th Cir. 2012).

Because AEDPA's statute of limitations is not jurisdictional, it is subject to equitable tolling. *Holland v. Florida*, 560 U.S. 631, 645 (2010). If a petitioner seeks equitable tolling, he must show "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Id.* at 649 (internal quotation marks omitted). There is also an equitable exception to the one-year limitations period when a petitioner makes a "convincing showing of actual innocence." *McQuiggin v. Perkins*, 569 U.S. 383, 386 (2013).

**A. Timeliness**

Both parties address the timeliness question under § 2244(d)(1)(D). The relevant question under § 2244(d)(1)(D) is not when the petitioner learned of the factual basis for his claim, but when he *should have* had he exercised due diligence. *Rucker v. Genovese*, 834 F. App'x 126, 127 (6th Cir. 2020). The standard for diligence under this subsection "does not

require maximum feasible diligence, only due, or reasonable diligence." *DiCenzi v. Rose*, 452 F.3d 465, 470 (6th Cir. 2006) (quotation marks omitted).  In evaluating whether a petitioner has exercised due diligence, the court's task is "to determine whether a duly diligent person in petitioner's circumstances would have discovered" the factual predicate.  *Id.*  Merely alleging that the petition did not actually know the facts underlying the claims is "insufficient to show due diligence." *Stokes v. Leonard*, 36 F. App'x 801, 804 (6th Cir. 2002) (quoting *In re Boshears*, 110 F.3d 1538, 1540 (11th Cir. 1997)).

When a petitioner's claim is that a state court decision was unconstitutional, the decision itself is the factual predicate for the claim.  *Shorter v. Richard*, 659 F. App'x 227, 232 (6th Cir. 2016).  The petitioner, however, must have exercised due diligence in the lead-up to that decision.  *Id.* (concluding that the petitioner failed to show due diligence in seeking a delayed appeal, such that his delayed-appeal claim was untimely).

Two questions are at the heart of whether the Court should find Herring's petition timely: First, what constitutes the "factual predicate" of the claim?  Second, when, with due diligence, *should* the factual predicate have been discovered?

The parties' discussion unhelpfully focuses almost exclusively on the first question – with the parties debating whether the full justification for the change in Herring's estimated release date is necessary for raising the claim.  This is not an easy hair to split, in part because it must reflect what reasonable diligence a person would exercise to investigate a claim, which itself is heavily dependent upon the circumstances.  We're naturally more likely to challenge what we consider illogical or unjustified than we might the mundane.

Regardless of which reading is applied, however, Herring bears the burden to show that he filed his federal petition within one year of when the predicate could have been discovered

with due diligence.  *See McSwain v. Davis*, 287 F. App'x. 450, 454-55 (6th Cir. 2008).  I find that he has failed to meet this burden.

Herring has not presented any evidence to dispute the Warden's contention that Herring's maximum estimated release date became longer due to the mandatory-consecutive firearm specification sentences.  In fact, in appealing his second state habeas petition to the Ohio Supreme Court, Herring appears to have adopted that conclusion, arguing that BOSC unlawfully determined his release date after determining his firearm specification sentences to be consecutive terms.  *See* ECF Doc. 4-1 at 184-207.  Those sentences were imposed in 2001 and 2008 – years before 2015 when Herring first claims he became aware that his maximum release date had changed.  ECF Doc. 4-1 at 39, 47-51.  Herring's habeas briefing makes no mention of this 7-year period in which his maximum estimated release date was longer.  He has provided no explanation for why he did not know nor ask about his maximum release date earlier than 2015.  *See* ECF Doc. 1; ECF Doc. 1-2; ECF Doc. 1-3; ECF Doc. 10.

Although maximum feasible diligence is not required, courts have routinely required some evidence of the petitioner's diligence in pursing his claim.  *See McFarlane v. Harris*, No. 19-3899, 2020 U.S. App. LEXIS 1851, at *8 (6th Cir. 2020) ("McFarlane offered no explanation for when and how he eventually learned of his appellate rights.  Nor did he provide any evidence of efforts made from the time he was sentenced in March 2014 until over three years later when he filed his motion for leave to file a delayed appeal.  Because McFarlane has not shown that he acted with the reasonable diligence necessary to discover his right to appeal, [a COA cannot be granted]"); *Dowdy v. Jackson*, No. 20-10744, 2020 U.S. Dist. LEXIS 209063, at *10 (E.D. Mich. Nov. 9, 2020) (finding that a petitioner failed to satisfy § 2244(d)(1)(D), in

14

part, because he failed to "explain why he could not have attempted to seek this information many years earlier than he did."); *Shorter*, 659 F. App'x at 232.

Even accepting Herring's contentions regarding the factual predicate as true, Herring has not provided any argument regarding *when* that factual predicate *could have been* learned. The gun specifications were added to Herring's total prison time (and, therefore, his estimated release date) in 2001 and 2008. Herring filed his first state petition for habeas corpus in 2018, but he has provided no explanation for his inaction from 2001 – or 2008 – until 2018. And without such an explanation, we have no way of concluding when Herring *could have* or *should have* discovered the issues on which he now bases his claims. Based on the information before the court, it appears that nothing prevented Herring from doing the things he did in 2015 and 2018 years earlier. Because Herring has not shown that he exercised the amount of due diligence necessary to permit his AEDPA statute of limitations to be determined under § 2244(D)(1)(d), I recommend that Herrings claims be found untimely.

### A. Statute of Limitations Exceptions

As an initial matter, Herring has not argued that he is entitled to equitable tolling or that an actual innocence claim should excuse his failure to file a timely petition. *See* ECF Doc. 1; ECF Doc. ECF Doc. 1-3; ECF Doc. 10. Thus, Herring has forfeited any such argument. *Wagner v. United States*, 805 F. App'x 354, 360 (6th Cir. 2020) ("A party forfeits arguments not squarely presented to the district court." (Internal quotation marks omitted)). However, even if Herring had raised such arguments, they would fail on the merits.

Warden Hill contends that Herring is not entitled to equitable tolling because he has not shown any extraordinary circumstances that prevented him from timely filing his federal petition and has not demonstrated his actual innocence. ECF Doc. 4 at 12-15.

15

Herring is not entitled to equitable tolling because he did not diligently pursue his right to file a federal habeas petition and has not pointed to any factor outside of his control that prevented him from filing a timely petition.  *Holland*, 560 U.S. at 649; *see generally* ECF Doc. 1; ECF Doc. 1-3; ECF Doc. 10.

Although discussed in a different context above, Herring's lack of demonstrated diligence in discovering the factual basis for his claim also shows why we must conclude that he has not shown the "reasonable diligence" required to warrant equitable tolling.  After learning of the reason for the extension of his estimated release date, Herring promptly brought the claim to the Ohio courts and filed his federal habeas petition within one year of the Ohio Supreme Court's ruling.  But, as noted above, the start of Herring's statute of limitations hinges not on when he claims to have learned of the factual predicate of his claims, but *when a duly diligent person* could have discovered that information.  *Rucker*, 834 F. App'x at 127.  And as discussed above, that was likely years before Herring claims to have uncovered such information.  Further, Herring had not identified any extraordinary circumstances that prevented him from filing his federal petition, thereby denying his right to claim equitable tolling.

Finally, Herring cannot show that an actual innocence claim should excuse his failure to file a timely petition because his claims challenge only the legality of his incarceration. *McQuiggin*, 569 U.S. at 386); *see generally* ECF Doc. 1; ECF Doc. 1-3; ECF Doc. 10.  And Herring has not submitted with his § 2254 petition or with his traverse any new, reliable evidence showing that he is factually innocent of his convictions.  *Souter v. Jones¸* 395 F.3d 577, 589-90 (6th Cir. 2005).  Thus, Herring has not met his burden to show that an exception to AEDPA's one-year statute of limitations would permit this court to look past his failure to file a timely petition.

Accordingly, because Herring has not shown: (i) that he filed his petition within one year of when a duly diligent person would have discovered the factual predicate of his claim; (ii) that he is entitled to equitable tolling of the AEDPA statute of limitations; or (iii) has evidence to support a gateway claim of actual innocence, I recommend that Herring's petition be dismissed as untimely.

## V.    Alternative Analysis

Even if Herring's claims were not subject to dismissal on statute of limitations grounds, they would nevertheless be subject to dismissal, in part, as non-cognizable or denial for lack of merit.

### A.    Cognizability

Herring's petition asserts four grounds for relief, namely: (i) that Ohio Rev. Code § 2929.14(E)(1)(a) constitutes an ex post facto law, (ii) Ohio Rev Code § 2929.41 is an unconstitutional statute, (iii) the Ohio Supreme Court's decision on his second habeas petition resulted in a "secret sentencing mechanism" that permitted BOSC to alter his sentence in violation of the Separation of Powers Doctrine, and (iv) due to BOSC's unlawful alteration of his sentence, he is being held beyond the maximum of his sentences.  *See* ECF Doc. 1 at 5-10. Herring contends that he is not challenging the computation of his prison terms but argues that his sentence was altered unlawfully under an erroneous statute.  *See* ECF Doc. 1-4 at 4-5.

Warden Hill contends that Herring's petition must also be dismissed due to his claims being non-cognizable on habeas review, asserting they are claims purely for the computation of his sentence not to its execution.  *See* ECF Doc. 4 at 15-18.  He also asserts that separation-of-powers claims are non-cognizable when raised about two branches of state government.  ECF Doc. 4 at 17-18.  However, Warden Hill concedes that when a petitioner claims he is being held

17

beyond his maximum prison term and his continued incarceration violates his constitutional right to liberty, such claims are cognizable.  ECF Doc. 4 at 18 n.8.

Herring's traverse reiterates the distinction he makes in his claims, asserting that he is exercising his "due process right to fair sentencing procedures."  ECF Doc. 10 at 10-13.

Federal habeas relief is only available for *federal* constitutional violations.  28 U.S.C. § 2254(a).  Thus, "federal habeas corpus relief does not lie for errors of state law."  *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).  A claim that alleges only errors of state law is cognizable only to the extent that the "error amounts to a fundamental miscarriage of justice or a violation of the right to due process."  *Cristini v. McKee*, 526 F.3d 888, 897 (6th Cir. 2008).

Herring's separation-of-powers claim is not cognizable; the separation of powers between state branches of government is a matter of state law, and "a federal court may not grant habeas relief based on a 'perceived error of state law.'"  *Witherspoon v. Campbell*, No. 19-2258, 2020 U.S. App. LEXIS 11147, at *3 (6th Cir. 2020) (quoting *Austin v. Jackson*, 213 F.3d 298, 302 (6th Cir. 2000)).  As to the remaining claims, the State contends that Herring's grounds for relief are all state law claims masquerading as federal constitutional claims.  Although, as discussed further below, that may be the ultimate outcome given the flaws in Herring's contentions, Herring has clearly asserted not only that the BOSC and Ohio Supreme Court violated his state law rights but also violated his federal constitutional rights, when they enforced what he contends was an unconstitutional sentence.  *See* ECF Doc. 1-3; ECF Doc. 10.  His claims go far beyond the BOSC merely "miscalculating" his sentence.  Consequently, the claims are cognizable, as the warden noted in his Return of Writ.  *See also Hayden v. Mohr*, No. 3:16-CV-286, 2016 U.S. Dist. LEXIS 94576 (S.D. Ohio Jul. 19, 2016) (reviewing a petitioner's claim

that he was "being held illegal[ly] and being denied his personal liberty, a violation of the constitutions") *aff'd in* 2016 U.S. Dist. LEXIS 86767 (S.D. Ohio, Jul. 2, 2016).

**B.     Merits**

As to Herring's remaining cognizable claims, the parties' briefing on the question of whether the Ohio Supreme Court's decision was contrary to or an unreasonable application of clearly established federal law leaves much to be desired.  Warden Hill relies almost exclusively on his contentions that Herring's petition merely challenges the state court's interpretation and application of its own laws.  But he contends – to the extent the court finds Herring's claims to be cognizable –that his petition fails because he cannot show that he has been incarcerated beyond the expiration of his maximum possible sentence.  ECF Doc. 4 at 18-25.  This is a purely factual argument; and this court's function in deciding habeas petitions is not to serve as a referee of factual disputes.  Herring's briefing is no more helpful.  His entire argument is the conclusory assertion that his sentence violates Supreme Court precedent, but he has offered almost no analysis of how his circumstances align with the boilerplate holdings he has quoted. *See* ECF Doc. 1-3; ECF Doc. 10.

Unhelpfully, neither has addressed the fact that the Ohio Supreme Court's decision rested entirely on state law.  Generally, a state court decision made on state law grounds is not subject to habeas review.  *See Coleman v. Thompson*, 501 U.S. 722, 735 (1991) (holding that federal habeas corpus review may proceed only "if the decision of the last state court to which the petitioner presented his federal claims fairly appeared to rest primarily on resolution of those claims, or to be interwoven with those claims, and did not clearly and expressly rely on an independent and adequate state found.").  Only when a petitioner can show that the state-court decision "very clearly" overlooked a claim, will the federal habeas court review the claim for the

first time.  *See Rodgers v. May*, 69 F.4th 381, 388 (6th Cir. 2023) (citing *Johnson*, 568 U.S. 289, 303 (2013)).  "Otherwise, federal courts should treat it as adjudicated."  *Id.* at 389.

Because Herring has not contended that the Ohio Supreme Court "very clearly" overlooked his federal claims, I will evaluate Herring's claims on the presumption that the Ohio Supreme Court rejected Herring's federal claims on the merits.  When a state court has adjudicated the habeas petitioner's claims on the merits, AEDPA permits a federal court to grant relief only if that decision: (i) was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court; or (ii) was based on an unreasonable determination of the facts in light of the record before the state court.  28 U.S.C. § 2254(d).  "Unreasonable" doesn't simply mean that the state court got it wrong.  *Chinn v. Warden, Chillicothe Corr. Inst.*, 24 F.4th 1096, 1101 (6th Cir. 2022).  Only if no "fairminded jurist" could agree with the state court may we grant relief.  *Harrington v. Richter*, 562 U.S. 86, 102 (2011).

I find that the Ohio Supreme Court's decision was not contrary to established Supreme Court precedent.  Before discussing the applicable case law, it will be helpful to review the factual foundation for Herring's claims.  Because Herring's claims are premised on a mistaken interpretation of Ohio law, the foundation for those claims won't support their weight.  At bottom, Herring's claims are all based on the core contention that the Ohio Supreme Court's decision in *State v. Foster*, 109 Ohio St. 3d 1 (2005) "wholly eliminated" § 2929.14(E)(1)(a)(ii), Ohio Rev. Code.  And because of that, the BOSC's "addition" of consecutive prison time from his firearm specifications became: (i) the implementation of an ex post facto law, (ii) the application of an unconstitutional statute, and (iii) a "secret sentencing mechanism," all in

violation of the separation of powers, and Herring's due process rights.  *See* ECF Doc. 1-3; ECF Doc. 10.  But Herring's reading of *Foster* is specious.

In *Foster*, the Ohio Supreme Court stated:

> The following sections, because they either create presumptive minimum or concurrent terms or require judicial factfinding to overcome the presumption, have no meaning now that judicial findings are unconstitutional: Ohio Rev Code Ann. §§ 2929.14(B), 2929.19(B)(2), and 2929.41.  These sections are severed and excised in their entirety, as is Ohio Rev. Code Ann. § 2929.14(C), which requires judicial fact finding for maximum prison terms, and § 2929.14(E)(4), which requires judicial findings for consecutive terms.

*Foster*, 109 Ohio St. 3 at 29.  However, in its syllabus, the Supreme Court said: "[t]rial courts have full discretion to impose a prison sentence within the statutory range and are no longer required to make findings or give their reasons for imposing maximum, *consecutive*, or more than the minimum sentence."[6]  *Id.* at 1 (emphasis added); *see also State v. Sergent*, 148 Ohio St. 3d 94, 102 (2016) (recognizing *Foster*'s limited severance).  Thus, *Foster* plainly did not eliminate consecutive sentencing under Ohio law; rather, it struck down the statutory provision that allowed judges to make factual findings at sentencing which, in turn, impacted the length of a convicted person's sentence.

With a correct reading of *Foster*, we can readily see that Herring's claims provide no basis for habeas relief.  First, because the trial court was *always* statutorily required to impose consecutive sentences for firearm specification convictions, Herring was never subject to an ex post facto law.  *See Rogers v. Tennessee*, 532 U.S. 451, 456 (2001) (holding that the Ex Post Facto Clause prohibits the states from passing laws that (1) criminalize an action done before the law was passed, (2) aggravates a crime after it was committed; (3) changes the punishment of a

---

[6] Rule 2.2 of the Ohio Supreme Court Rules for the Reporting of Opinions provides: "The law stated in an opinion of the Supreme Court shall be contained in its text, *including its syllabus*, if one is provided." (Emphasis added).  Thus, syllabi of the Ohio Supreme Court are considered authoritative statements of Ohio law.

crime already committed, or (4) alters the legal rules of evidence so that less or different testimony is required than at the time to offense was committed).  Nothing about the Ohio statutory or case law that Herring challenges fits this description; he cannot show, factually, that he has been subjected to an after-conviction enhancement of any sentence he was already facing.

Second, because Ohio statutory law required consecutive sentences, the BOSC was not a part of a "secret sentencing mechanism."  The Bureau of Sentence Computation merely did what Ohio law openly required.

Finally, because consecutive sentences are constitutionally permitted under *Oregon v. Ice*, 555 U.S. 160 (2009), and because Herring has not cited any clearly established federal law determined by the United States Supreme Court that would require a greater explanation than what his sentencing courts provided and the Ohio courts affirmed, we cannot find that his sentences were imposed in violation of his due process rights.  *See Hayden*, 2016 U.S. Dist. LEXIS 94576, at *5 ("[the petitioner] points to no provision of Ohio law that requires including in a judgment the fact that there is another outstanding unsatisfied judgment which must also be served.").  Nor can consecutive sentences be found to violate the either the Ex Post Facto or Due Process Clauses when the defendant was always aware of the potential for consecutive sentences.  *See Hooks v. Sheets*, 603 F.3d 316, 321 (6th Cir. 2010).  Here, both Ohio law and Herring's judgment entries of conviction and sentencing informed him that he was required to serve consecutive sentences for his firearm specification convictions.

Herring has not shown that any decision by the Ohio courts was contrary to or involved an unreasonable application of clearly established federal law as determined by the Supreme Court of the United States; or that they were based on unreasonable determinations of the facts in

22

light of the evidence presented in the state court proceedings.  Because he has not made those

showings his claims fail on the merits.

Accordingly, even if Herring's claims were not barred by the AEDPA statute of

limitations, we would be bound to dismiss them, in part, as non-cognizable or deny them in their

entirety for lack of merit.

## VI.     Certificate of Appealability

In order to appeal the denial of federal habeas relief, the petitioner must obtain a

certificate of appealability ("COA").  28 U.S.C. § 2253(c)(1).  To receive a COA, the petitioner

must make a "substantial showing of the denial of a constitutional right."  *Id.* § 2253(c)(2).

Specifically, he must show that "jurists of reason could disagree with the district court's

resolution of his constitutional claims or that jurists could conclude the issues presented are

adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327

(2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)).  And when a claim was denied on

procedural grounds, the petitioner "must show that reasonable jurists could disagree about the

both the procedural ruling and the underlying constitutional claim."  *Winburn v. Nagy*, 956 F.3d

909, 912 (6th Cir. 2020) (citing *Slack*, 529 U.S. at 484).

If the court accepts my recommendation, Herring will not be able to show that the

dismissal of his claims as untimely under AEDPA's one-year statute of limitations is debatable

among jurists of reason.  Herring failed to demonstrate – or even make any argument – that he

exercised diligence to discover his estimated release date after his 2001 and 2008 convictions.

He did not file his petition until December 2021.  He has not met his burden to show that he is

entitled to equitable tolling.  He has not presented an actual innocence claim.  Because jurists of

reason would not find debatable the conclusion that Herring's petition is untimely or that he has

not shown that he is entitled to proceed notwithstanding his failure to file a timely petition, I recommend that no COA issue in this case.

## VII.    Recommendation

Because Herring's § 2254 petition is untimely and because his claims are otherwise non-cognizable in part and meritless, I recommend that Herring's claims be DISMISSED and his petition for a writ of habeas corpus be DENIED.  I further recommend that Herring not be granted a COA.

Dated: August 18, 2023

Thomas M. Parker
United States Magistrate Judge

_____

**Objections, Review, and Appeal**

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge.  Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C. § 636(b)(1); Local Rule 72.3(b).  Properly asserted objections shall be reviewed de novo by the assigned district judge.

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation.  *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019).  Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).  Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 U.S. Dist. LEXIS 100383, *6 (W.D. Ky. June 15, 2018) (quoting *Howard*).  The failure to assert specific objections may in rare cases be excused in the interest of justice.  *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).

24